## Case No. 14,336.

### The UNDAUNTED.

### [2 Spr. 194.] [1]

District Court, D. Massachusetts. Nov., 1862.

AFFREIGHTMENT—LIEN FOR CHARTER MONEY—VESSEL LET TO UNITED STATES—PRIZE CARGOES.

1. The owners of a vessel let to the United States for a transport, in time of war, have no lien for their charter-money on goods the United States may put on board.

2. In the absence of an agreement to that effect, it is not to be presumed that the United States intends to charge captors with the expense of sending prize cargoes to port for adjudication, in vessels belonging to, or in the service of, the United States.

3. Prize cargoes sent in for adjudication in a transport chartered by the government, are not chargeable with the payment of freight or any part of the charter-money, in favor of the owners of the vessel.

In admiralty.

The petitioners, pro se.

R. H. Dana, Jr., U. S. Atty., for the United States and captors.

SPRAGUE, District Judge. Application has been made to me, by the owners of the ship Undaunted, to allow them $1200 out of the proceeds of certain prize cargoes condemned and sold by the court. The Undaunted was let to the United States, through Captain Paul George, a quartermaster, by a charter made at this port, for an undefined period of time, at the rate of $6000 per month. The vessel went to Ship Island with soldiers and stores, and there discharged her cargo. Invalid soldiers and stores were put on board for her return cargo. At the same time, by order of General Butler, the cargoes of certain small vessels captured by our cruisers in the Gulf were put on board, to be brought to this district, and delivered to the officers of this court for adjudication. On the arrival of the Undaunted in Boston, Captain McKim, who had succeeded Captain George as quartermaster, took out the men and stores of his department, and gave notice to the owners that the charter was terminated, paid the charter-money to the time of the notice, and informed them that he would not be responsible for the hire of the vessel while the prize cargoes were being taken out and delivered.

The owners asserted a right to detain the prize cargoes until this additional charge should be paid or secured, and the marshal, who had a warrant from the court to take possession of the goods as prize, agreed, in order to get possession of them, to be responsible,—not, I suppose, personally, but in his official capacity; and the goods were de-

---

[1] [Reported by Hon. Richard H. Dana, Jr., and here reprinted by permission.]

livered to him. They have since been condemned and sold; and this claim is made for $1200, which is the charter rate for the six days that the vessel was detained to unload and deliver the prize goods.

The first question is whether this six days' use of the vessel was under the charter. The charter, though made through a quartermaster, is made to and with the United States; and there is no limitation as to the kinds of goods that may be put into her, or as to the department of the government for which she may be used. The United States had as good right to put on board prize crews, prize goods, and men of the navy, as soldiers or military stores; and the owners are not confined to the quartermaster's department for their pay, but can look to the general government as the party with which they contracted.

These prize goods, then, being lawfully put on board, were on board under the charter; and it was the duty of the owners not only to transport them, but to unload and deliver them. On the other hand, the charter subsisting until the goods were out, the owners could claim of the government charter-money until that time. The attempt of the quartermaster to terminate the charter while the vessel was actually detained for the purpose of discharging the cargo, was nugatory.

The United States, then, are liable to the owners for the $1200, but can the court take it out of the prize goods? The prize belongs one-half to the captors; and if this fund must pay it, the captors lose their proportion. The inquiry therefore arises, whether the captors can so be charged.

It is not the custom of the government to charge captors with a contribution toward the expenses the government is subjected to in bringing in prizes for adjudication, by their own vessels or seamen. Expenses incurred by the employment of other persons, as pilots, and the charges of custody after arrival and delivery, are charges on the fund. But I know of no case where the government, bringing in prizes or prize cargoes in government vessels, has called for a contribution from the captors towards the wages or provisions of the men, or has made a claim in the nature of freight or hire for the use of the vessels. This ship, at Ship Island, was in the employ of the government, as a transport. There is no evidence or even suggestion that there was an understanding, when these cargoes were put into the Undaunted, that the captors or the goods should be charged with any payment for their transportation and delivery. In the absence of any agreement to that effect, I cannot think the captors expected, or the government intended, that they should contribute towards the charter-money of the Undaunted; and it was as much the duty of the owners of the ship, under the charter, to unload and deliver the prize cargoes as to transport them.

But the petitioners claim the payment from this fund, on the ground that, having a lien on the goods, they waived it upon the marshal's agreement that the lien should be paid, which, they say, gives them a claim in equity on the proceeds of the goods. The difficulty with this argument is that they had no lien. It cannot be supposed that persons who charter vessels to the government, as transports or supply ships, especially in time of war, are to have a right to detain the public property put on board until their demands for freight are paid, or the right to arrest the goods under a libel in court. Not only is this inconsistent with public policy, but the government cannot allow it to be supposed that its own credit is not sufficient security. It is noticeable, too, that the charter, while it contains the usual clause pledging the vessel, omits the usual clause reciprocally pledging the cargo. Not that such a clause is necessary to give a lien, but the omission of it, in a manner apparently intentional, indicates that both parties understood that a lien could not be allowed on such a contract. It was therefore the duty of the owners to deliver the goods to the marshal, without terms, when he applied for them under his warrant. There was no consideration for his promise; and, moreover, he had no right to affect the goods with a charge to which they were not subjected either by the law, or by a necessity the law recognizes.

The government owes the petitioners the $1200, but I have no funds of the government which I have authority to charge with its payment, and in my opinion it is not chargeable on the prize goods.

See The Nassau, 4 Wall. [71 U. S.] 634.